Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JULIA FELIZ BARRERA<br><br>Recurrente<br><br><br>v.<br><br><br>POWER SOLAR, LLC.,<br>SUNNOVA ENERGY<br>CORPORATION<br><br>Recurridos | TA2026RA00117 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente de la Defensoría de las Personas con Impedimentos<br><br>Querella número:<br>DPI-2025-10-0065<br><br>Sobre:<br>Incumplimiento de Contrato y Garantía |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

**Brignoni Mártir, Juez Ponente**

### S E N T E N C I A

En San Juan, Puerto Rico, a 12 de mayo de 2026.

Comparece ante nos, Julia Feliz Barrera (en adelante, "la recurrente"). Solicita nuestra intervención para que dejemos sin efecto la *"Resolución"* emitida y notificada el 23 de febrero de 2026 por la Defensoría de las Personas con Impedimentos (en lo sucesivo, por sus siglas, "DPI"). Mediante esta, la DPI decretó el cierre y archivo de la acción incoada por la recurrente por falta de jurisdicción sobre la materia.

Por los fundamentos que expondremos a continuación, *confirmamos* la *"Resolución"* recurrida.

**I.**

El 4 de octubre de 2025, la recurrente presentó una *"Querella Formal – Solicitud de Acomodos Razonables y Paro de Discrimen"*[1] ante la DPI en

---

[1] Cabe mencionar, que obra en el expediente ante nos copia fotográfica de una *"Resolución en Reconsideración y Paralización por Quiebra Desestimación de Jurisdicción,"* emitida, el 25 de septiembre de 2025, por el Departamento de Asuntos del Consumidor ("DACo"). Mediante esta, DACo paralizó la acción administrativa instada por la recurrente en contra de Sunnova Energy Corporation, dado que Sunnova se acogió a la Ley Federal de Quiebras. De otra parte, DACo desestimó la reclamación entablada en contra de la co-querellada, Power Solar, bajo el fundamento de que las alegaciones de la recurrente estaban dirigidas a cuestionar un asunto de generación y producción de energía, sobre lo cual, DACo no tiene autoridad legal para dilucidar sino el Negociado de Energía de Puerto Rico. En desacuerdo, la recurrente instó un recurso de revisión judicial ante esta Curia a través del caso de designación alfanumérica: TA2025RA00307. Así pues, el 18 de diciembre de 2025, emitimos *"Sentencia"* para dicho recurso. Mediante la misma, revocamos la aludida Resolución. En consecuencia, **ordenamos la continuación de los procedimientos ante DACo en contra de Power Sola**r.

contra de Power Solar, LLC ("Power Solar"). En esencia, indicó que Power Solar le instaló un sistema incorrecto de energía renovable el cual no se ajusta a sus condiciones de salud ni a las de sus hijos. Particularizó, que sus hijos tienen el diagnóstico de trastorno del espectro autista. Así pues, razonó que la referida parte violentó la política pública local y federal sobre el acomodo razonable al no proveerle un sistema idóneo. A tenor de lo anterior, entiende que Power Solar discriminó en contra de sus hijos debido a que no consideró sus impedimentos. Como remedio, solicitó que la DPI le ordene a Power Solar que realice la instalación necesaria de placas y baterías "**para cubrir el consumo indicado en su propio contrato."** Cónsono con ello, peticionó que la referida instalación se ejecute sin costo adicional; que se declare que este caso constituye discrimen por impedimento; y que estos hechos sean informados a las agencias pertinentes para la adopción de los protocolos necesarios.

Tras varios trámites procesales que no son necesarios de pormenorizar, el 20 de febrero de 2026, el Oficial Examinador presentó un *"Informe de Caso del Oficial Examinador."* Mediante este, recomendó a la DPI declarar su falta de jurisdicción sobre la materia para atender el reclamo incoado por la recurrente. Razonó, que la causa de acción presentada no contiene como elemento principal un discrimen por impedimento sino un asunto de naturaleza contractual. Asimismo, determinó que ante el DACo se había presentado una acción similar por lo cual existe riesgo de que se ejecute duplicidad de esfuerzos y recursos.

Posteriormente, el 23 de febrero de 2026, la DPI notificó la *"Resolución"* objeto de revisión. A través de esta, acogió las recomendaciones del Oficial Examinador. En consecuencia, decretó el cierre y archivo del caso por falta de jurisdicción sobre la materia.

En la misma fecha, la recurrente presentó *"Moción de Reconsideración."* Del expediente ante nos, no surge que la referida Moción haya sido adjudicada por la DPI. Así pues, transcurridos los quince (15) días que tiene la Agencia para considerar las solicitudes de

reconsideración y tras comenzar el término para instar un recurso de revisión administrativa, el 16 de marzo de 2026, la recurrente presentó de forma oportuna ante este Tribunal un *"Recurso de Revisión Judicial."* Mediante este, esbozó los siguientes señalamientos de error:

> Erró la Agencia al concluir que carece de jurisdicción sobre una alegación de discrimen por impedimento y negativa a acomodo razonable, por el mero hecho de que existe una relación contractual subyacente.
>
> Erró la Agencia al aplicar el estándar incorrecto de que la discapacidad debe ser el elemento principal de la controversia para conferir jurisdicción en un caso de acomodo razonable.
>
> Erró la Agencia al equiparar "acceso formal" al servicio con "acceso efectivo," ignorando que la alegación central es la negativa a realizar ajustes razonables con conocimiento previo de condiciones médicas documentadas.
>
> Erró la Agencia al Concluir que existe duplicidad real con el caso de DACo RE-2024-0006620, cuando dicho foro nunca adjudicó alegaciones de discrimen por discapacidad ni realizó análisis bajo legislación antidiscriminatoria.
>
> Erró la Agencia al designar como Oficial Examinador ad hoc al Lcdo. José A. Montalvo Vera, quien tenía conocimiento previo de las Querellas de la recurrente y figuraba como parte del personal señalado en el requerimiento formal de actuación administrativa radicado bajo la LPAU, sin divulgar dicho conflicto ni permitir recusación.

El 24 de marzo de 2026, este Tribunal notificó una *"Resolución"* mediante la cual le concedimos a la DPI un término de quince (15) días para presentar copia certificada del expediente administrativo.

Transcurrido el término concedido en la referida *"Resolución"* sin que la DPI haya cumplido con lo ordenado, y en vista de que el asunto ante nuestra consideración versa sobre una cuestión de Derecho, prescindimos del expediente requerido y procedemos a disponer del presente caso.

**II.**

**A.      Revisión Judicial de las Decisiones Administrativas:**

Las determinaciones de las agencias administrativas son revisables ante el foro judicial para garantizar que estas actúan dentro de marco de las facultades que les fueron delegadas por ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 753 (2024); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022). De esta manera, los ciudadanos tienen un foro al cual recurrir para vindicar sus derechos y obtener un remedio en los casos en

que las agencias actúen de forma arbitraria. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753. La revisión judicial de una decisión administrativa se circunscribe a examinar lo siguiente: 1) si el remedio concedido por la agencia fue el apropiado; 2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por la prueba sustancial que surgió del expediente administrativo; y 3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA FED. SAVS. BANK,* 214 DPR 473, 484-485 (2024).

En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Cabe resaltar, que en el ejercicio de revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754. Antes de variar la referida decisión se debe examinar la totalidad del expediente y "determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba." *Íd.* A su vez, las decisiones administrativas se deben evaluar bajo el marco de la deferencia, por razón de la experiencia y pericia de dichas agencias respecto a las facultades que se le han delegado. *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 215 (2012).

En consideración a la aludida deferencia, se ha establecido que "las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produce suficiente evidencia para derrotarlas."

*Batista, Nobbe v. JTA. Directores*, supra, pág. 215. A la luz de ello, la parte que impugne una decisión administrativa tiene el peso de la prueba para demostrar que esta no se sustenta en el expediente administrativo o que las conclusiones a las cuales llegó la agencia son irrazonables. *OEG v. Martínez Giraud*, supra, pág. 89.

**B.    Ley de la Defensoría de las Personas con Impedimentos del Gobierno de Puerto Rico (Ley Núm. 158-2015):**

En virtud de la Ley Núm. 158-2015, según enmendada, se creó la Defensoría de las Personas con Impedimentos. La DPI tiene el deber de fiscalizar y promover la defensa de los derechos de las personas con impedimentos, según contempla el Artículo 2.01 de la precitada legislación. 1 LPRA sec. 812. Este organismo gubernamental tiene como propósito velar por la erradicación del discrimen por razón de impedimento físico o mental, tomar acciones en contra del abuso o negligencia u otras formas de negación de derechos y garantizar que se establezcan e implanten prácticas y condiciones idóneas en instituciones, hospitales o programas para personas con impedimentos. *Id.* En particular, el Artículo 2.06 de esta Ley crea el cargo de Defensor(a) de las Personas con Impedimentos. 1 LPRA sec. 817. Las acciones y determinaciones de este Defensor deberán estar guiadas exclusivamente por la aludida Ley, los reglamentos aplicables y la protección de los derechos de las personas con impedimentos en Puerto Rico. *Id.* Entre las facultades que le asisten al referido Defensor se encuentran las siguientes:

> Atender, investigar, procesar y adjudicar querellas relacionadas con acciones y omisiones que lesionen los derechos de las personas con impedimentos, les nieguen los beneficios y las oportunidades a que tienen derecho y afecten los programas de beneficios para las personas con impedimentos y conceder los remedios pertinentes conforme a derecho, así como para ordenar acciones correctivas a cualquier persona natural o jurídica que niegue, entorpezca, viole o perjudique los derechos y beneficios de las personas con impedimentos. 1LPRA sec. 819T.

Entre los deberes que la Asamblea Legislativa le ha delegado a la DPI, se encuentra la facultad de investigación. Al amparo de esta facultad, la DPI decidirá si investigar o no los hechos denunciados por una parte querellante. 1 LPRA sec. 820. En los casos que en que decida no investigar

los hechos traídos ante sí deberá notificarlo a la parte querellante, expresando las razones para tal negativa y apercibiéndole a la parte promovente su derecho a solicitar reconsideración y revisión judicial de la decisión de no investigar. *Id.* La persona Defensora no investigará cuando: **A**. **Se refieran a algún asunto fuera del ámbito de su jurisdicción;** B. Sean carentes de mérito; C. La parte promovente ha desistido voluntariamente; D. La parte promovente no tiene legitimación para instarla; **E. La querella está siendo investigada por otra agencia y, a juicio del (de la) Defensor(a), representa una duplicidad de esfuerzos actuar sobre ésta**. (Énfasis suplido). *Id.*

Cabe mencionar que, para efectos de esta legislación "querellante" significa lo siguiente:

> [T]oda persona, natural o jurídica, incluyendo una agencia gubernamental que promueva una acción ante la Defensoría, por entender que se ha violado o infringido algún derecho reconocido bajo las leyes y reglamentos que administra la Defensoría. Esto incluye, pero no se limita, a cualquier persona a la que se le ha infringido algún derecho reconocido por la Constitución de los Estados Unidos de América, la Constitución del Estado Libre Asociado de Puerto Rico, las leyes o los reglamentos que administra la Defensoría; que incluye, sin que se entienda como una limitación, personas con impedimentos, padres, madres, tutores(as) de hecho o derecho, custodios, encargados(as), cónyuges, hijos, hijas, parientes, representantes legales, apoderados(as) entre otros familiares o personas que se encargan de asistir y velar por los intereses de la persona a la que se le han infringido algún derecho reconocido por la Constitución de los Estados Unidos de América, la Constitución del Estado Libre Asociado de Puerto Rico, o bajo las leyes y los reglamentos que administra la Defensoría. 1 LPRA sec. 811.

**C. Carta de Derechos de las Personas con Impedimentos (Ley Núm. 238-2004):**

La Ley Núm. 238-2004 establece una Carta de Derechos para las personas con impedimentos. La legislación de referencia se creó con el fin de reconocer las necesidades particulares de la población con impedimentos y garantizar la igualdad de las personas con discapacidad en nuestra sociedad. Véase, la Exposición de Motivos de la Ley Núm. 239-2004, 1 LPRA sec. 512 et seq. En específico, "[e]n el marco del principio de igualdad humana, el Estado reconoce su responsabilidad de establecer las condiciones adecuadas que promuevan en las personas con impedimentos el goce de una vida plena y el disfrute de sus derechos

naturales, humanos y legales, libre de discrimen y barreras de todo tipo." Artículo 3, 1 LPRA sec. 512. Cónsono con lo anterior, en virtud de la precitada Ley se declara política pública "la inclusión de las personas con impedimentos como meta principal en la prestación de servicios de todas las agencias e instrumentalidades de nuestro país." *Id.*

Para efectos de esta Ley una persona con impedimentos es aquella "que tiene un impedimento físico, mental o sensorial que limita sustancialmente una o más actividades esenciales de su vida; tiene un historial o récord médico de impedimento físico, mental o sensorial; o es considerada que tiene un impedimento físico, mental o sensorial." Artículo 2, 1 LPRA sec. 512. Entre los Derechos generales de las personas con impedimentos se encuentran: (a) Que se le garanticen plenamente todos los derechos, beneficios, responsabilidades y privilegios **en igualdad de condiciones a los de una persona sin impedimentos;** (b) Estar libre de interferencia, coacción, discrimen o represalia para o al ejercer sus derechos civiles. (Énfasis suplido). Artículo 4, 1 LPRA sec. 512a.

**D.      Ley para Prohibir el Discrimen Contra las Personas con Impedimentos Físicos, Mentales o Sensoriales, Ley Núm. 44 de 2 de julio de 1985, según enmendada, 1 LPRA sec. 501 et seq**:

Mediante la Ley Núm. 44 de 2 de julio de 1985, la Asamblea Legislativa busca garantizar "un trato igual en situaciones y actividades que, hasta el momento, resultan desventajosas y discriminatorias para aquellas personas que pudiendo participar y competir, no lo han hecho debido a sus limitaciones." Exposición de Motivos de la precitada Ley. A tenor de ello, queda prohibido que las instituciones públicas o privadas determinen, entre otros, beneficios y servicios que establezcan "criterios, normas, condiciones, mecanismos o métodos administrativos cuyo propósito o efecto sea discriminar contra las personas con algún tipo de impedimento físico, mental o sensorial." 1 LPRA sec. 504. Para fines de esta Ley el término "institución pública o privada" significa:

> [C]ualquier asociación, sociedad, federación, instituto, entidad o persona natural o jurídica, incluyendo todas las agencias, oficinas, organismos, corporaciones y edificios públicos, que presten, ofrezcan o rindan, algún servicio, programa o actividad, reciban o no alguna aportación económica o fondos del Gobierno de Puerto

Rico, o de cualquier patrono que esté cubierto por lo dispuesto en el Artículo 9 de esta Ley, independientemente de si recibe o no recursos económicos del Estado. 1 LPRA sec. 501(c).

De igual modo, la referida Legislación define el vocablo "acomodo razonable" de la siguiente forma:

> Significará el ajuste lógico adecuado o razonable que permite o faculta a una persona cualificada para el trabajo, con limitaciones físicas, mentales o sensoriales ejecutar o desempeñar las labores asignadas a una descripción o definición ocupacional. Incluye ajustes en el área de trabajo, construcción de facilidades físicas, adquisición de equipo especializado, proveer lectores, ayudantes, conductores o intérpretes y cualquier otra acción que razonablemente le facilite el ajuste a una persona con limitaciones físicas, mentales o sensoriales en su trabajo y que no representa un esfuerzo extremadamente oneroso en términos económicos.

> Significará, además, la adaptación, modificación, medida o ajuste adecuado o apropiado que deben llevar a cabo las instituciones privadas y públicas para permitirle o facultarle a la persona con impedimento cualificada a participar en la sociedad e integrarse a ella en todos los aspectos, inclusive, trabajo, instrucción, educación, transportación, vivienda, recreación y adquisición de bienes y servicios. 1 LPRA sec. 501(b).

**III.**

A través del recurso de epígrafe, la recurrente plantea que incidió la DPI al declararse sin jurisdicción sobre la materia para atender su reclamo. Al respecto, arguye que la DPI basó su falta de autoridad en la apreciación errónea de que el asunto en disputa es exclusivamente contractual. De igual modo, aduce que la DPI omitió tomar en consideración su planteamiento principal relativo a la negativa de Power Solar de brindarle un acomodo razonable. En específico, esgrime que ella "no disputa haber contratado el servicio; disputa que dicho servicio, tal como fue instalado y mantenido, no cumple con las necesidades funcionales documentadas de sus hijos con condiciones médicas que requieren energía continua." Añade, que la DPI erró al aplicar el estándar de la discapacidad como "elemento principal" para auscultar su jurisdicción. Además, arguye que la aludida Agencia incidió al determinar que existe riesgo de duplicidad de esfuerzos debido a la existencia de la reclamación presentada ante el DACo sobre incumplimiento contractual. De otra parte, asevera que el Oficial Examinador asignado al presente caso debió ser sustituido por "apariencia de parcialidad," puesto que tiene asignadas otras querellas presentadas por ella.

Luego de examinar detenidamente la documentación que obra en el expediente ante nos y los planteamientos de la recurrente, determinamos confirmar la decisión recurrida. A continuación, explicamos los fundamentos que nos llevan a ello.

El asunto umbral ante este Tribunal consiste en una cuestión de Derecho relativa a si la DPI tiene o no jurisdicción para atender en sus méritos la *"Querella Formal – Solicitud de Acomodos Razonables y Paro de Discrimen,"* presentada por la recurrente. Tratándose de un asunto jurídico, esta Curia está obligada a revisar las conclusiones de derecho de la DPI en todos sus aspectos.

Expuesto lo anterior, se hace necesario examinar el marco jurídico que posibilita la existencia, facultades y el accionar de la DPI. Ello así, puesto que las agencias administrativas son criaturas de la Ley y sus funciones y acciones deben estar cimentadas en los estatutos que viabilizan sus ejecutorias. Sobre el particular, nuestro mas Alto Foro ha expresado lo siguiente:

> Es la ley el medio o fuente legal que establece los límites del poder y de las facultades de las agencias administrativas. Así, es esta, bajo una serie de principios inteligibles, la que le confiere autoridad a las agencias y les delega **únicamente** los poderes necesarios para implementar las leyes que administran. Como corolario, **un organismo administrativo no puede asumir jurisdicción sobre un asunto a menos que esté claramente autorizado en ley para ello.** (citas omitidas). *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, supra.

De conformidad a lo expuesto, la DPI es un organismo gubernamental que tiene el deber de fiscalizar y promover la defensa de los derechos de las personas discapacitadas. En particular, la Asamblea Legislativa le delegó al Defensor(a) de las Personas con Impedimentos la facultad de "atender, investigar y adjudicar querellas relacionadas con acciones y omisiones que lesionen los derechos de las personas con impedimentos […]" 1 LPRA sec. 819T.

Por otro lado, las disposiciones de la Carta de Derechos de las Personas con Impedimentos, *supra*, tienen el propósito de garantizar la igualdad de estas personas en nuestra sociedad. Siendo así, a las personas con discapacidad se les deben salvaguardar sus derechos en

igualdad de condiciones a los de una persona sin impedimentos. Cónsono con ello, la Carta de Derechos prohíbe discriminar contra las personas discapacitadas en el momento en que ellas ejerzan sus derechos civiles. Asimismo, la Ley Núm. 44 de 2 de julio de 1985 prohíbe que las instituciones públicas o privadas determinen, entre otros, beneficios y servicios que establezcan "criterios, normas, condiciones, mecanismos o métodos administrativos cuyo propósito o efecto sea discriminar contra las personas con algún tipo de impedimento físico, mental o sensorial." 1 LPRA sec. 504.

En el caso presente, la Querella instada por la recurrente ante la DPI se fundamenta en que no ha podido obtener un remedio a su favor a pesar de que, según su razonamiento, ha alegado en distintas agencias gubernamentales la insuficiencia de los servicios prestados por Power Solar. Particularmente, en la Querella presentada ante la DPI la recurrente aduce lo siguiente: "Desde noviembre de 2024, he comparecido ante múltiples agencias del Gobierno de Puerto Rico —incluyendo DACO, la OIPC y el Negociado de Energía— para denunciar el fraude y la falta de cumplimiento de Power Solar LLC." Cónsono con ello, la recurrente entiende que la ausencia de una adjudicación a su favor se debe a una "falta de coordinación agencial" y a la violación de su derecho a un acomodo razonable.

En específico, argumenta que Power Solar incumplió con garantizarle un acomodo razonable al no instalar de forma correcta el sistema energético de su hogar, a pesar de que ella envió a dicha empresa un certificado médico que detalla las condiciones de sus hijos. La referida parte argumenta expresamente "me instalaron un sistema insuficiente sabiendo que no cubría las **necesidades energéticas de mi hogar."** (Énfasis suplido). Para subsanar la aducida deficiencia la recurrente solicita como remedio que la DPI le ordene a Power Solar redimensionar el sistema solar de su casa mediante la instalación de placas y baterías adicionales.

Nótese, que el reclamo principal de la recurrente se resume en que Power Solar no cumplió con instalar en su casa un sistema de energía solar idóneo. Ante ello, plantea que bajo sus circunstancias particulares el alegado incumplimiento "constituye discriminación por discapacidad por haber negado un servicio adecuado."

Según expuesto, para que la DPI pueda adjudicar las querellas presentadas ante sí las mismas deben estar vinculadas al menoscabo de los derechos que les asisten a las personas con discapacidad. En armonía con lo anterior, la legislación sobre personas con impedimentos está cimentada en lograr la equidad en la convivencia colectiva de las personas con y sin impedimentos. Es por ello, que mediante la utilización de acomodos razonables se busca la integración social de las personas con discapacidad y al mismo tiempo se pretende desalentar que las instituciones públicas y privadas adopten e implementen criterios y condiciones discriminatorias.

Al aplicar este marco normativo a la acción instada por la recurrente, se hace necesario concluir que el reclamo de dicha parte se centra en la falta de cumplimiento contractual de Power Solar y no en el trato desigual y discriminatorio por razón de impedimento. Obsérvese, que las alegaciones de la recurrente se amparan en la presunta deficiencia del sistema de energía solar instalado por la referida empresa. Asimismo, el remedio que solicita para subsanar la aducida falta de idoneidad se fundamenta en la instalación de placas y baterías adicionales. Así pues, sus reclamos están directamente relacionados a la integridad, identidad e indivisibilidad de la prestación debida. Es decir, sus planteamientos son de naturaleza contractual.

Cabe mencionar, que nuestro ordenamiento civil establece que las obligaciones contractuales se extinguen si se ejecuta o entrega íntegramente la prestación debida; si el acreedor recibe la prestación que se pactó y no otra; y si la prestación acordada se entrega completa y no

parcialmente.[2] Los planteamientos de la recurrente están vinculados a los requisitos anteriores, puesto que impugna la suficiencia y la integridad de la instalación ejecutada por Power Solar. Ante ello, es DACo y no la DPI la agencia con el conocimiento experto y la facultad delegada por Ley para atender y adjudicar en sus méritos el caso de la recurrente.[3] De hecho, se encuentra ante la consideración de DACo una Querella presentada por la propia recurrente la cual trata sobre el alegado incumplimiento contractual ejecutado por Power Solar. La controversia allí planteada no ha sido adjudicada por DACo, según se desprende del *"Recurso de Revisión Judicial"* aquí presentado. En vista de lo anterior, no erró la DPI al abstenerse de atender en sus méritos la Querella de epígrafe y en consecuencia al decretar el cierre y archivo de la acción instada por la recurrente.

De otra parte, la recurrente no presentó prueba demostrativa de la alegada "apariencia de parcialidad" incurrida por el Oficial Examinador que realizó la recomendación adjudicativa de este caso. La recurrente se limita a argüir que el referido Examinador tiene ante su consideracion la evaluación de otras querellas radicadas por ella. La sola existencia de estas alegaciones no nos coloca en posición de resolver a favor de la falta imparcialidad aducida por aludida parte. Por tanto, los errores señalados no fueron cometidos y determinamos confirmar la decisión recurrida.

Es preciso mencionar, que lo que hoy resolvemos no incide de manera alguna en el caso pendiente ante el DACo ni prejuzga los méritos de la controversia allí expuesta. El presente caso únicamente se limita a confirmar la determinación de cierre y archivo notificada por la DPI. Siendo así, la recurrente tiene la oportunidad de proseguir e intentar probar su caso sobre incumplimiento contractual ante el DACo. A su vez, el referido

---

[2] Véase, los Artículos 1117-1119 del Código Civil de Puerto Rico, Ley Núm. 55-2020, según enmendada, 31 LPRA secs. 9141-9143.

[3] Surge de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, que DACo tiene el deber y la facultad, entre otras cosas de "[a]tender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía." Véase, Artículo 6(c), 3 LPRA sec. 314e.

Departamento ostenta la facultad adjudicativa que la Legislatura le ha conferido para en su día emitir la resolución que estime procedente.

**IV.**

Por los fundamentos expuestos, *confirmamos* la *"Resolución"* objeto de revisión.

**Notifíquese.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones